**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:

| | |
|---|---|
| MSS, INC., <br><br>　　　　DEBTOR. | CASE NO. 23-02487-5-JNC <br> CHAPTER 11 |
| MSS, INC., <br>　　　　*Plaintiff*, <br><br> vs. <br><br> ELLEN LIGHTING, INC. d/b/a ELLEN LIGHTING & HARDWARE, <br><br>　　　　*Defendant.* | ADV. PRO. NO. 25-_____-5-JNC |

**COMPLAINT**

**NOW COMES** Debtor-Plaintiff MSS, INC. ("MSS," "Plaintiff," or "Debtor"), by and through undersigned counsel, complaining of Defendant ELLEN LIGHTING, INC. d/b/a ELLEN LIGHTING & HARDWARE ("Ellen Lighting" or "Defendant"), and hereby alleges and asserts as follows:

**INTRODUCTION AND NATURE OF THE ACTION**

1. This is an adversary proceeding commenced by MSS, against Defendant, seeking the following:

    A. Avoidance, recovery, and preservation for the benefit of the bankruptcy estate, prepetition transfer(s) and payment(s) made to, and received by, Defendant within the ninety-day period preceding the filing of the above-captioned bankruptcy case, totaling at least $27,125.55, as preferential

2

transfers pursuant to §§ 547(b) and 550 of the Bankruptcy Code; and

B. Avoidance, recovery, and preservation for the benefit of the bankruptcy estate, prepetition transfers and payments made to, and received by, Defendant within the two-year period preceding the filing of the above-captioned bankruptcy case, totaling at least $115,968.56 as constructively fraudulent transfers pursuant to §§ 544, 548 and 550 of the Bankruptcy Code, and the Uniform Voidable Transactions Act, codified by the North Carolina General Assembly at N.C. Gen. Stat. § 23-39.1, *et seq.* (the "UVTA").

## IDENTIFICATION OF THE PARTIES

2. MSS is a corporation formed and existing under the laws of the State of North Carolina, which provides commercial and residential electrical services to construction projects through North Carolina and South Carolina.

3. Defendant is a corporation formed and existing under the laws of the State of Texas, which maintains a principal place of business located at 12601 Stafford Road, Stafford, Texas 77477-3521.

4. Defendant, at all times relevant hereunder, was engaged in the distribution and sale of electrical supplies and materials to general contractors, subcontractors, and customers throughout the State of North Carolina.

5. Defendant is a "creditor" of MSS, as that term is defined under § 101(10)(A) of the Bankruptcy Code, as Defendant holds a claim against MSS that arose prior to the commencement of the above-captioned chapter 11 bankruptcy case and from the sale, on account, of certain electrical supplies and materials to MSS for various construction projects in North Carolina and South Carolina.

3

## JURISDICTION AND VENUE

6. This adversary proceeding relates to the above-captioned chapter 11 bankruptcy case commenced by MSS on August 28, 2023 (the "Petition Date") through the filing of a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina, BK Case No. 23-02487-5-JNC (the "Bankruptcy Case").

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 151, and 157, and it is a "core proceeding" because it seeks determination, avoidance and recovery of a preferences, id. § 157(b)(2)(F), seeks avoidance and recovery of preferential transfers, arises in and concerns matters affecting the administration of estate in the above-captioned case, see id. §157(b)(2)(A), a determination of the validity, extent and priority of certain liens, see id. § 157(b)(2)(K), and affects rights duly established, and relates to the adjustment of the debtor-creditor relationship, under the Bankruptcy Code. Id. §157(b)(2)(O).

8. This Court has the authority to hear this matter and grant the relief requested by MSS herein, pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1408 and 1409, as all of the actions complained of and giving rise to the claims alleged herein arose in this judicial district, within which MSS and Defendant reside, are present, or otherwise regularly conduct their respective business operations and affairs.

4

10. Specifically, all of the prepetition transfers at issue, were completed and undertaken within, or utilized the services of, financial institutions located in the State of North Carolina that provided banking, account and financial services to MSS, which is a North Carolina corporation.

## FACTUAL ALLEGATIONS

11. Prepetition, MSS was engaged as a subcontractor on various multi-family construction projects throughout North Carolina and South Carolina (the "Construction Projects") and, in connection therewith, purchased and was invoiced by Defendant, for certain electrical supplies and materials necessary for the completion of the scope of work that MSS contracted for the Construction Projects.

12. Defendant did not obtain, nor was it granted a security interest, lien, or encumbrance in any of the electrical materials and supplies that were purchased by MSS, and utilized in connection with the Construction Projects.

13. Defendant, as a result, is and at all times relevant hereunder was, an unsecured creditor of the Debtor with respect to any debt, obligation, and liability arising from the purchase and sale of electrical materials and supplies by MSS on account prior to the Petition Date.

14. During the ninety-day period preceding the Petition Date (the "Preference Period"), Defendant received payment from the Debtor and/or third parties that represented amounts that were due and owing to MSS, totaling at least $27,125.55, and summarized as follows:

5

| Transfer Date | Method of Transfer | Transfer Amount |
|---|---|---|
| 6/12/2023 | Check No. 24662 (Check Date: June 6, 2023) Truist Bank (Account No. 3020) | $27,125.55 |
| | **TOTAL** | **$27,125.55** |

(collectively, the "Transfer" or the "Preferential Transfer").

15. The Transfer occurring on June 12, 2023, represent payment made to Defendant by check drawn from the prepetition bank account that MSS maintained at Truist Bank (the "Prepetition Bank Account"), which were applied towards the outstanding balance of previously-issued invoices for materials and supplies purchased by (and furnished to) MSS for the Construction Projects.

16. On June 12, 2023, the date that the Transfer was made to Defendant (collectively, the "Transfer Date"), it held an unsecured debt and claim against MSS, arising from electrical materials and supplies that were previously ordered, delivered, and invoiced for, *inter alia*, the Construction Projects.

17. On the Transfer Date, Defendant had not exercised or asserted any of its lien rights under Chapter 44A of the North Carolina General Statutes.

18. Official Form 206Sum, entitled "Summary of Assets and Liabilities for Non-Individuals," which was filed along with the Schedules and Statement of Financial Affairs [D.E. 56], reveals that that MSS owned total assets of $981,509.93, and total liabilities of

6

approximately $2,122,230.76, as of the Petition Date.

19. The liabilities of MSS ($2,122,230.76), exceeded the value of its assets and property ($981,509.93), by at least $1,140,720.83 as of the Petition Date.

20. The liabilities of MSS exceeded the value of its assets and property on each of the Transfer Dates (or when each of the Transfers occurred).

21. MSS, pursuant to 11 U.S.C. § 547(f), is presumed to be insolvent on the dates that each of the Transfers occurred within the Preference Period.

22. MSS seeks avoidance and recovery of the Transfer from Defendant based upon the circumstances of the Bankruptcy Case, the reasonable due diligence conducted prior to commencement of the above-captioned adversary proceeding, and taking into account the Defendant's known or reasonably knowable affirmative defenses under § 547(c) of the Bankruptcy Code, which included the internal business and financial records of MSS that evidence the absence of any defense to avoidance of the Transfer as preferential under § 547(b) of the Bankruptcy Code.

## FIRST CLAIM FOR RELIEF
**Avoidance and Recovery of Preferential Transfers**
[11 U.S.C. §§ 547(b), and 550]

23. MSS re-alleges and incorporates herein by reference all the allegations contained in the Complaint as if fully set forth in their entirety.

24. The Transfer was a direct and voluntary or involuntary conveyance, disposal, or parting with monetary funds and monetary amounts belonging to MSS.

25. The Transfer made to Defendant, constitutes a "transfer" within the meaning

7

set forth in § 101(54) of the Bankruptcy Code.

26. The Transfer was made to, or for the benefit of, Defendant.

27. At all times relevant hereunder, and including during the Preference Period, Defendant was a "creditor" of MSS, as that term is defined under §101(10) of the Bankruptcy Code.

28. Defendant, at all times relevant hereunder, was the initial transferee of the Transfer or the entity for whose benefit each the Transfer of the funds located in the Bank Account were made.

29. At all times relevant hereunder, and on each of the dates that the Transfer was made, Defendant held a claim against MSS that arose prior to the Petition Date by virtue of, and as evidenced by, the electrical materials and supplies that were purchased .

30. The Transfer was made by MSS on account of antecedent debt owed to Defendant that arose prior to the Petition Date.

31. On the dates that the Transfer was made to Defendant, MSS was indebted to Defendant for amounts in excess of the respective values of each of the Transfer.

32. The Transfer was not in the ordinary course of business or financial affairs of Defendant and MSS.

33. Defendant, in exchange for the Transfer, did not provide MSS with "new value," as defined by § 547(a)(2) of the Bankruptcy Code.

34. The Transfer was made to, and received by, Defendant, while MSS was "insolvent," as that term is defined under § 101(32) of the Bankruptcy Code.

8

35. At all times relevant hereunder, and during the Preference Period, and up to and including the Petition Date, the debts, obligations, and liabilities of MSS exceeded the value of its assets and property on the Transfer Date.

36. Receipt of the Transfer enabled Defendant to receive more than it would have otherwise received if MSS sought relief under chapter 7 of the Bankruptcy Code.

37. Defendant, as the recipient of the Transfer, received more than it would have otherwise received had the Transfer, which constituted a transfer of the interest of MSS in the funds on deposit in the Bank Account, had not been made.

38. Receipt of the Transfer enabled Defendant to receive more than it would have otherwise received payment of the underlying debts, obligations, and claim to the extent provided by the Bankruptcy Code.

39. Based upon the foregoing, MSS is entitled to avoidance of the Transfer totaling at least $27,125.55, which was made to Defendant within the ninety-day period preceding the Petition Date, as preferential transfers pursuant to § 547(b) of the Bankruptcy Code.

**SECOND CLAIM FOR RELIEF**
*In the Alternative – Avoidance of Constructively Fraudulent Transfers*
**11 U.S.C. §§ 544 and 548; N.C. Gen. Stat. § 39-23.1** *et seq*.

40. MSS realleges and incorporates herein by reference all the allegations contained in the Complaint as if fully set forth in their entirety.

41. During the two (2) period preceding the Petition Date, Defendant received payment from the Debtor totaling at least $115,968.56, and summarized as follows:

9

| Transfer Date | Method of Transfer | Transfer Amount |
|---|---|---|
| 5/1/2023 | Check No. 24578<br>(Check Date: April 25, 2023)<br>Truist Bank (Account No. 3020) | $52,238.52 |
| 5/11/2023 | Check No. 24611<br>(Check Date: May 9, 2023)<br>Truist Bank (Account No. 3020) | $30,074.28 |
| 5/23/2023 | Check No. 24636<br>(Check Date: May 17, 2023)<br>Truist Bank (Account No. 3020) | $30,313.96 |
| 6/12/2023 | Check No. 24662<br>(Check Date: June 6, 2023)<br>Truist Bank (Account No. 3020) | $27,125.55 |
| | **TOTAL** | **$115,968.56** |

(the "Constructively Fraudulent Transfers").

42. The Constructively Fraudulent Transfers were a direct and voluntary or involuntary conveyance, disposal, or parting with monetary funds and monetary amounts belonging to the Debtor and contained in the Bank Accounts.

43. The Constructively Fraudulent Transfers that were made to, and received by, Defendant, constitute a "transfer" within the meaning set forth in § 101(54) of the Bankruptcy Code.

44. The Constructively Fraudulent Transfers were made to, or for the benefit of, Defendant.

45. Any obligation or indebtedness under which MSS was required to pay for any electrical materials, supplies and goods is, and remains, constructively fraudulent, in that MSS was insolvent and the underlying indebtedness was incurred at a point in time when MSS was unable to pay its debts as they came due.

10

46. The Transfers were made for less than reasonably equivalent value to the extent that the Debtor did not receive or otherwise benefit from the services, materials, supplies, and goods that were purchased from, or provided by, Defendant.

47. The Debtor did not receive reasonably equivalent value in exchange for the Constructively Fraudulent Transfers.

48. At the time of each of the Constructively Fraudulent Transfers, prior to and after, MSS was engaged in business or transactions, or was about to engage in business or transactions, for which any property remaining with the Debtor was unreasonably small capital.

49. At the time the Transfers were made, the Debtor was insolvent, as evidenced by the fact that its outstanding liabilities, as of the Petition Date, totaled $5,129,155.94, when compared to the value of its assets, $3,551,834.02.

50. During the time period in which each of the Transfers were made, the Debtor intended to incur, or believed it would incur, debts and obligations beyond his ability to pay such debts and obligations once they came due or otherwise matured.

51. In addition to being insolvent, MSS—at the time of each of the Constructively Fraudulent Transfers—had negative net income and EBITDA.

52. Pursuant to § 548 of the Bankruptcy Code and/or N.C. Gen. Stat. § 39-23.1 *et seq.*, the Constructively Fraudulent Transfers (as well as any underlying indebtedness satisfied thereby) are avoidable, as constructively fraudulent transfers under the applicable provisions of the Bankruptcy Code and the UTVA.

11

53. MSS was unable to pay its debts as they came due at the time of the Constructively Fraudulent Transfers.

54. MSS had substantial past due obligations owed to many of its vendors for which it was unable to make timely payment throughout the period of the Transfers.

55. Based upon the foregoing, MSS is entitled to avoidance of the Constructively Fraudulent Transfers totaling at least $115,968.56 that were made to (and received by) Defendant, as constructively fraudulent transfers pursuant to §§ 544 and 548 of the Bankruptcy Code and the UVTA.

### THIRD CLAIM FOR RELIEF
**Recovery and Preservation for the Benefit of the Estate**
[11 U.S.C. §550]

56. MSS realleges and incorporates herein by reference all the allegations contained in the Complaint as if fully set forth in their entirety.

57. Defendant is the initial transferee or the entity for whose benefit the Transfer were made.

58. MSS, based upon the foregoing and in accordance with § 550 of the Bankruptcy Code, is entitled to have and recover judgment against Defendant, recovering and preserving for the benefit of the bankruptcy estate, the value of the Transfer and the Constructively Fraudulent Transfers avoided and totaling $115,968.56 pursuant to §§ 544, 547(b), and/or 548 of the Bankruptcy Code and the UVTA.

12

## PRAYER FOR RELIEF

**WHEREFORE**, and based upon the foregoing, MSS respectfully prays for entry of an Order providing the following relief:

1. MSS have and recover judgment against Defendant, avoiding, as a preferential or constructively fraudulent transfer pursuant to §§ 544, 547(b), and 548 of the Bankruptcy Code and the UVTA, the Transfer and the Constructively Fraudulent Transfers made to Defendant;

2. MSS have and recover a monetary judgment against Defendant, in the amount of at least $27,125.55, representing the amount of the Transfer that was made to Defendant as a preferential transfer pursuant to §§ 547(b) and 550 of the Bankruptcy Code;

3. MSS have and recover a monetary judgment against Defendant, in the amount of at least $115,968.56, representing the amount of the Constructively Fraudulent Transfers that were made to Defendant pursuant to §§ 544, 548, and 550 of the Bankruptcy Code, as well as the UVTA;

4. The costs of this action be taxed by the Court against Defendant, and awarded to MSS;

5. MSS be awarded any pre-judgment and post-judgment interest as may be allowed under applicable law; and

6. For such other and further relief as is just, necessary and proper.

13

Respectfully submitted this, the 13th day of January, 2025.

**BUCKMILLER & FROST, PLLC**

BY:   s/Joseph Z. Frost

JOSEPH Z. FROST (NCSB No. 44387)
jfrost@bbflawfirm.com

4700 Six Forks Road, Suite 150
Raleigh, North Carolina 27609
T: (919) 296-5040
F: (919) 977-7101

Counsel for Debtor-Plaintiff MSS, Inc.